(ON APPLICATION FOR REHEARING)
hPLOTKIN, Judge.
On consideration of the application filed on behalf of T.A., a juvenile, we recall our original opinion deleting those parts of the trial court’s judgment ordering the placement of T.A. in certain programs with the expectation that the costs of those programs would be borne by the State. Because T.A.’s counsel, the Orleans Indigent Defender Program, failed to file a brief prior to the rendering of the original opinion, this court erroneously believed that T.A. had been placed in the custody of the Department of Public Safety & Corrections (“Department”). • Had that been the case, then the original opinion of this court — -relying on La. Ch.C. art. 908(A)-(B); La. R.S. 15:901(G)(1); La. R.S. 15:901(D)(1); State in the Interest of S.S., 499 So.2d 1198 (La.App. 5 Cir.1986); and State in the Interest of J.H., 97-1291, (La.App. 4 Cir. 1/14/98), 706 So.2d 561—would have been correct in holding that a juvenile court cannot assign custody of a juvenile to the Department and simultaneously mandate that the juvenile be placed in certain programs and undergo certain forms of counseling or treatment. See also State in the Interest of Sapia, 397 So.2d 469 (La.1981).
LAs it turns out, though, T.A. was not placed in the custody of the Department. Rather, he was placed on probation in the custody of his parents.[1] The juvenile *180 court had the authority to do this under La. Ch.C. art. 897(A), which provides in pertinent part:
After adjudication of any felony-grade delinquent act other than those described in Article 897.1,[2] the court may:
(3) Place the child on probation in the custody of his parents or other suitable person.
Having elected to operate under art. 897(A)(3), the juvenile court was then required to comply with the provisions of art. 897(B).[3] Art. 897(B)(1) requires a juvenile court to prohibit the child from possessing drugs or alcohol; from engaging in further delinquent or criminal activity; and from possessing a firearm or carrying a concealed weapon if the child has been adjudicated for certain enumerated crimes.
Art. 897(B)(2) then provides a list of terms and conditions of probation that the juvenile court may impose if it deems them to be “in the best interests of the child and the public.” The relevant provision here is art. 897(B)(2)(d): “[The court may impose a] requirement that the child participate in any program of ^medical or psychological or other treatment found necessary for his rehabilitation.” Counsel for T.A. have succinctly stated one reason why the Legislature has provided the juvenile court with the choices enumerated in art. 897(B):
The child on probation is in the custody of his parents or some other suitable person, living in the community. The court is entrusted with the weighty burden of ensuring not only that the child gets rehabilitative services but also that the public is protected. The situation is distinctly different from one in which a child has been removed from his home and is living in the controlled environment of a group home or prison. When the child is living in the community, the court must have the authority to order specific terms and conditions of probation to protect the public.
Accordingly, we hold that a juvenile court has the authority to order a child to undergo certain forms of treatment as a condition of probation. Art. 897(B)(2)(d) is clear on this point, and the Department does not disagree.
The Department does argue, though, that the trial court does not have the authority to order it to bear the cost of the programs which children on probation are compelled to attend. Although we cannot find, and although counsel for T.A. has not cited any provision specifically requiring the Department to pay for services imposed as conditions of probation on a child who is on probation while remaining in the custody of his parents, La. R.S. 15:1085(D) provides:
[The Department] may make payments, at the rates established under R.S. 15:1084, for the care and treatment of youth adjudicated delinquent or in need of supervision, who are assigned to the custody of the department and placed by the department in either non-state operated residential or nonresidential treatment programs. Subject to the availability of agency resources and the availability of service providers, the department may make payments, at rates established under R.S. *181 15:1084, for services to adjudicated youth and their families who are at risk of having the youth removed from the legal custody and care of the parents or legal guardians.
Thus, even though this statute only states that the Department “may” make payments in situations such as the instant one, we do not believe that the decision 14is left to the Department’s unfettered discretion; for the statute contains built-in limitations on the Department’s obligation to pay in that (1) resources must be available; (2) providers must be available; and (3) the rate of payment must comply with La. R.S. 15:1084.
Here, the Department has not claimed that any of these requirements is a deterrent to its ability to assist T.A.’s family in complying with the juvenile court’s judgment. In fact, the Department has stated that it presently has a contract with the Impact Program, the program to which T.A. was assigned and in which the Department regularly places juveniles on probation, presumably in compliance with La. R.S. 15:1084. As counsel for T.A. concedes, there could well be a different outcome if the court had ordered T.A. to participate in a program with which the Department does not have a contractual relationship in compliance with La. R.S. 15:1084.
Based on the above discussion, we affirm the judgment of the trial court, including those provisions that rely on La. Ch.C. art. 897(B)(2). We further hold that the trial court has the authority to order payment for the relevant services from the Department, unless the Department establishes that such payment would be inappropriate under La. R.S. 15:1085(D).

REHEARING GRANTED; PREVIOUS OPINION RECALLED; TRIAL COURT JUDGMENT AFFIRMED.

. On April 3, 1995, T.A. was found delinquent for the illegal carrying of a weapon and was placed on a one-year probation term. On September 22, 1999, T.A. was found delinquent again for the same offense and was placed on a two-year probation term. In its judgment on the latter offense, the juvenile court specifically stated that:
*180 5) The juvenile is to be placed in the Impact Program at 1023 Baronne Street. 6) There is to be random drag testing at Impact. If the test turns out to be positive, (T) is to participate in drug counseling. 7) The juvenile is to be involved in counseling through [the Office of Youth Development] dealing with anger management and the issue of authority figures and following directions.
The Department objects to the imposition of these obligations on it and to the imposition of specific types of counseling by the trial court.

. An illegal weapons offense is not one of the crimes listed under art. 897.1.

. As a technical matter, because T.A.'s commitment was suspended and he was placed on probation, the trial court arrived at Paragraph B by way of art. 897(E), which allows for such suspension.