J¿PER CURIAM:*
In State In Interest of Sapia, 397 So.2d 469, 474 (La.1981), this Court held that while a juvenile court “has the authority to place custody of a child adjudged in need of care or supervision in a private facility if it deems such placement to be in the best interest of the child,” the court did not have the authority to order the Department Of Heath and Human Resources to pay for such services because the Department “is only authorized to make payments of the care and treatment of children in non-state facilities where the children are placed there by the Department.” We acknowledged in Sapia that “strong arguments [may] be made that the juvenile’s best interest is served by permitting the juvenile court to place the child adjudged in need of care or supervision in private facilities at the expense of the state or its appropriate department.” Sapia, 397 So.2d at 475. Nevertheless, this Court also recognized that “the Legislature, focusing on fiscal restraint and centralized supervision, has seen fit to do otherwise,” and that we were “not | ^empowered to change the law or to apply such law as we might prefer, but rather must enforce clearly applicable statutes enacted by the Legislature.” Id.
This Court decided Sapia under the original version of La.R.S. 15:1085, which authorized the Department of Health and Human Resources to make payments under contracts negotiated with providers for the care and treatment of children “placed by [the department] in child caring agencies, child placing agencies, maternity homes, and shelter care facilities.... ” La. R.S. 15:1085(A)(emphasis added); 1978 La. Acts 786. The legislature then amended La.R.S. 15:1085(A) in 1990 La. Acts 322 to authorize such payments for the care and treatment of juveniles placed by the Department of Social Services or Department of Health and Hospitals in various private agencies. The legislature also added a new subsection “D” to the statute to provide that the Department of Public Safety and Corrections [the Department] may make payments for the care and treatment of juveniles adjudged in need of care or adjudicated delinquent “who are assigned to the custody of the department and placed by the department in either non-state operated residential or nonresidential treatment programs.” La.R.S. 15:1085(D) further provides that “[sjubject to the availability of agency resources and the availability of service providers, the department may make payments ... for services to adjudicated youth and their families who are at risk of having the youth removed from the legal custody and care of the parents or legal guardians.”
In the present case, the court of appeal sought to give effect to the latter provision of La.R.S. 15:1085(D) by reversing itself on the question of whether a juvenile court in New Orleans, following its adjudication of respondent as delinquent for a second offense involving the illegal carrying of weapons, had the ^authority to return respondent to the custody of his parents *353 while on probation under supervision of the Office of Youth Development, subject to the special condition that he enter an Impact Program funded by the Department of Corrections. See La.C.C. Art. 897(B)(2)(d) (a juvenile court may impose as a condition of probation the requirement “that the child participate in any program of medical or psychological or other treatment found necessary for his rehabilitation.”). On original hearing, under the impression that the court had in fact assigned custody of respondent to the Department of Corrections, the court of appeal amended the juvenile court’s disposition order to delete the language mandating specific placement of respondent in the Impact program on grounds that the Department has plenary authority to decide where a child committed to its custody may be placed. State in Interest of T.A. 99-2803 (La.App. 4th Cir.4/26/00), 761 So.2d 828.
On application for rehearing, satisfied that respondent had been placed on probation and returned to the custody of his parents and was therefore not in the custody of the Department of Corrections, the court of appeal reconsidered its original decision and held that a juvenile court may place a juvenile on probation in a non-state program with which the Department has a contractual arrangement and at the Department’s expense, as an alternative to committing the juvenile to the Department’s custody. The court of appeal acknowledged that La.R.S. [415:1085(D) “only states that the Department ‘may’ make payments in situations such as the instant one,” but concluded that the Department does not enjoy “unfettered discretion” to make the decision because the statute contains “built-in limitations on the Department’s obligation to pay in that (1) resources must be available; (2) providers must be available; and (3) the rate of payment must comply with La.R.S. 15:1084.” State in Interest of T.A., 99-2803 (La.App. 4th Cir.8/2/00), 774 So.2d 178 (on reh’g). The court noted in this regard that “the Department has not claimed that any of these requirements is a deterrent to its ability to assist T.A.’s family in complying with the juvenile court’s judgment .... [although] it presently has a contract with the Impact Program, the program to which T.A. was assigned and in which the Department regularly places juvenile-” T.A., 774 So.2d at 181. The court of appeal thus concluded that the juvenile court “has the authority to order payment for the relevant services from the Department, unless the Department establishes that such payment would be inappropriate under La.R.S. 15:1085(D).” Id.
We granted the Department of Correction’s application to reverse the court of appeal’s decision .because we found no indication that when it adopted the present version of La.R.S. 15:1085, the legislature had any less concern with fiscal restraint and centralized supervision than when this Court considered the original version of the statute a decade earlier in Sapia. As a general matter, La.Ch.C. art. 908(A) provides that the Department of Corrections “shall have sole authority over the placement, care, treatment, or any other consideration deemed necessary from the resources that are available for children judicially committed to the department.” Similarly, La.R.S. 15:901(D)(1) states that upon the child’s commitment, the Department “shall determine the child’s placement, care and treatment, and the expenditure to be made therefore.... ” The Department of Corrections thus has plenary power to make decisions with respect to those juveniles committed to its custody, and a juvenile court therefore may not commit a juvenile to the custody of the Department and specify which ser *354 vices or treatment program the Department must provide. State ex rel. R.F., 97-1056 (La.3/16/99), 733 So.2d 84, State in the Interest of S.T., 97-0216 (La.App. 1st Cir.9/19/97), 699 So.2d 1128, writ denied, 97-2627 (La.2/13/98), 706 So.2d 992; State in the Interest of J.H., 97-1291 (La.App. 4th Cir.1/14/98), 706 So.2d 561.
As we concluded under analogous circumstances in Sapia, it follows that the Department of Correction’s plenary discretion over juvenile offenders committed to its custody extends to payments for services in non-state facilities with which the Department has contracted for the care and treatment of juveniles. La.R.S. 15:1085(D). As to the question of whether that plenary discretion also extends to payments for services to juvenile offenders who are not in the custody of the Department, it appears that the salutary purpose of the new law was to maintain “at no-additional cost” programs which had been “operating ... for over a year in a couple of locations” by giving the Department the authority to provide care and treatment for juveniles without the necessity of going to court and securing “custody of those offenders in order to pay for those services.” See, Minutes, House Committee on the Administration of Criminal Justice, June 14, 1999, Senate Bill 138. This new provision gave the Department of Corrections additional flexibility to respond to the needs of juveniles who require supervision, for the avowed purpose of “reducing] the number of youths being placed in group homes and institutions.” See Minutes, Committee on Judiciary, May 9, 1990, Senate Bill 138.
However, we see no intent by the legislature, either in the express wording of La.R.S. 15:1085(D), or in the legislative history of the 1990 La. Acts 322, to lessen the Department’s control over funds it may make available for the care and treatment of juveniles in non-state facilities. In the year following the amendment of La. R.S. 15:1085, the legislature enacted La. Ch.C. art. 908 to provide expressly |fithat “[w]hen care and treatment are to be provided by the department, either through facilities and programs operated by it or through contractual arrangements or through purchase of service arrangements for which the department provides funding, the child shall be committed to the department rather than to a particular institution or facility.” La.Ch.C. art. 908(B)(emphasis added); 1991 La. Acts 235. The legislature thereby made clear that a court may compel the Department of Corrections to expend its resources for the care and treatment of a juvenile offender only when it commits the offender to the custody of the Department. Even then, the court may not designate which resources the Department must employ for the juvenile’s benefit. La.Ch.C. art. 908(A).
The court of appeal therefore erred when it concluded on rehearing that a juvenile court may dictate the expenditure of Department funds by assigning a juvenile offender to a particular treatment program maintained or funded by the Department of Corrections as a condition of probation under La.Ch.C. art. 897(B)(2)(d), unless the Department makes an affirmative showing that its financial resources and/or a lack of qualified providers preclude payments for such services. The 1990 amendment of La.R.S. 15:1085 makes possible a cooperative arrangement between a court and the Department for the use of the Department’s funds to forestall removing juveniles from the custody of their parents but does not provide the court with the authority to compel the Department to use its funds in this manner if, in its discretion and considering the availability of funds and service *355 providers, the Department chooses not to do so.
We therefore reverse the decision of the court of appeal on rehearing. Although the juvenile court has the authority to place respondent in a non-state facility for care and treatment as a condition of probation under La.Ch.C. art. 897(B)(2)(d), the court had no authority without the assent of the Department to |7place respondent in an Impact Program funded by the Department and at the Department’s expense. Given the outcome here, the juvenile court judge may choose an alternative placement as a condition of probation under the authority of La.Ch.C. art. 897(B)(2)(d). Accordingly, as opposed to simply deleting the condition placing respondent in the Impact Program, we vacate that condition and remand the case to the juvenile court for further consideration in light of the views expressed herein.
DECISION OF COURT OF APPEAL ON REHEARING VACATED; CASE REMANDED TO THE JUVENILE COURT.

 Retired Judge Robert L. Lobrano, assigned as justice pro tempore, participating in the decision.